IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN THE DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IAN KAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF COOK, ILLINOIS, COOK | ) | No. 05 C 3015 |
| COUNTY SHERIFF MICHAEL SHEAHAN, | ) | |
| COOK COUNTY SHERIFF DEPUTY | ) | |
| RAYMOND GREVE, other unknown members | ) | |
| of the COOK COUNTY SHERIFF'S | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Ian Kay filed a six-count Complaint based on the December 27, 2004 shooting of his dog and the temporary impounding of his other dog. Specifically, Kay alleges violations of his Fourth and Fourteenth Amendment rights. *See* 42 U.S.C. § 1983.[1] Kay also brings state law claims of trespass, conversion, respondeat superior, and indemnification. Defendants Cook County, Cook County Sheriff Michael Sheahan, Cook County Sheriff Deputy Raymond Greve, and other unknown members of the Cook County Sheriff's Department filed the present Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants in part and denies in part Defendants' summary judgment motion.

---

[1] Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another person of a right, privilege, or immunity secured by the United States Constitution or federal laws. *See* 42 U.S.C. § 1983; *Lekas v. Briley,* 405 F.3d 602, 606 (7th Cir. 2005).

**BACKGROUND**

On December 27, 2004, Deputy Raymond Greve was assigned to deliver a summons to a person named Alar Piir who was listed at the address of 217 W. Palatine Road, Unit B, Palatine, Illinois. (R. 34-1, Defs.' Rule 56.1 Stmt. Facts ¶¶ 1, 20.) At that time, however, only Ian Kay resided at this address. (*Id.* ¶ 37.) Around 8:15 a.m. on December 27, 2004, Deputy Greve arrived at the 217 W. Palatine Road location. (*Id.* ¶ 2.) Based on a red car parked near the location, Deputy Greve testified that he thought someone may be at home. (*Id.* ¶¶ 3, 4.) The parties dispute whether the storm door and the steel entry door to Unit B were open at that time, although it is not disputed that the doors were unlocked and that Deputy Greve knocked on the door several times. (*Id.* ¶ 5; R. 41-1, Pl.'s Rule 56.1 Stmt. Facts ¶¶ 45, 46, 56.) At his deposition, Deputy Greve testified that he could see through the window and that there was a light on upstairs inside of the residence. (Defs' Stmt. Facts ¶ 6.) While looking through the window, Deputy Greve also saw a white dog jumping up and down.[2] (*Id.* ¶ 7; Pl.'s Stmt. Facts ¶ 56.)

Further, Deputy Greve testified that he radioed the dispatcher explaining that the door was open, he knocked on the door, and no one responded. (Defs' Stmt. Facts ¶ 8.) He also told the dispatcher that he was going to check on the well-being of whoever was inside. (*Id.*) A well-being check is a check that is done to ensure that there is no crime scene, as well as a check for sick or injured people who cannot call out for help. (*Id.* ¶ 9.) At his deposition, Deputy Greve testified that he thought there might be someone who was in trouble inside of Unit B. (*Id.*

---

[2] Throughout Defendants' briefs, they characterize Kay's white dog as a pit bull, which is a fact that is in dispute. Accordingly, the Court will characterize Kay's dogs by their color and not their breed.

¶ 10.)

Deputy Greve further testified that thereafter a large brown dog pushed open the storm door and grabbed him by the sleeve. (*Id.* ¶ 11; Pl.'s Stmt. Facts ¶ 60.) Deputy Greve also testified that he shoved the dog back with his foot, after which the dog then lunged at him. (Defs' Stmt. Facts ¶¶ 12, 13.) Deputy Greve then drew his weapon and shot the dog. (*Id.* ¶ 13.) The dog stepped back and dropped to the floor in the doorway having been struck by the single bullet in its mouth. (*Id.* ¶ 15.) The dog then died. (*Id*. ¶ 16.) Deputy Greve no longer saw the white dog. (*Id.* ¶ 18.) Animal Care and Control was called to remove the dead brown dog. (*Id*.)

When Animal Warden Frank Pierson arrived at the residence, he and Deputy Greve entered the residence together. (*Id.* ¶ 23.) It was Pierson's intention to "dart" the white dog and remove it once it was asleep. (*Id.* ¶ 22.) Accordingly, Pierson shot the white dog with a dart while it was in the basement of the residence and the dog ran to the second floor before succumbing to the anesthesia. (*Id.* ¶ 27; Pl.'s Stmt. Facts ¶¶ 65, 66.) Pierson then removed the white dog and took it to the Animal Welfare League. (Defs' Stmt. Facts ¶ 30.) Animal Control also removed the dead dog. (*Id*. ¶ 31.)

When Kay returned from work that evening, the doors to his residence were locked and he saw blood and bloody footprints in his living room. (Pl.'s Stmt. Facts ¶¶ 47, 49.) When he called the Palatine Police Department, an officer told him to call the Cook County Sheriff's Department. (*Id*. ¶ 51.) Kay then went to the Cook County Sheriff's Department in Skokie, Illinois and learned for the first time that someone may have shot one of his dogs. (*Id*. ¶ 52.) The next day, Kay eventually found his dogs after calling various animal shelters and he retrieved his white dog from the Animal Welfare League. (*Id.* ¶ 53, Defs' Stmt. Facts ¶ 32.) At

3

no time did Deputy Greve attempt to contact the owner of the residence or leave information regarding what transpired at the residence. (Pl.'s Stmt. Facts ¶¶ 69, 71.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004).

**ANALYSIS**

I. **Fourth Amendment Claim**

   A. **Seizure of Dogs**

In Count I of his Complaint, Kay contends that the shooting of his brown dog and the impounding of his white dog were unreasonable seizures in violation of the Fourth Amendment.

The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. A seizure of property or "effects" occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (citation omitted). It is well-established that destroying an individual's personal property meaningfully interferes with the individual's possessory interest in that property. *United States v. Jacobsen,* 466 U.S. 109, 124-25, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

Here, Defendants do not argue that killing Kay's brown dog and impounding his white dog did not meaningfully interfere with Kay's possessory interest in his personal property.[3] Although the Seventh Circuit has yet to specifically hold that dogs – or more generally pets – are personal effects protected under the Fourth Amendment, other circuit courts have done so. *See San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 975 (9th Cir. 2005) (killing dog is seizure under Fourth Amendment); *Altman v. City of High Point,* 330 F.3d 194, 204-05 (4th Cir. 2003) (by destroying dog, police officers "seized" plaintiff's effects); *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 210 (3d Cir. 2001) (officer's destruction of plaintiff's dog constituted Fourth Amendment seizure). Further, it stands to reason that if the Fourth

---

[3] Although Defendants state in their reply brief that the shooting and killing of Kay's dog *may* constitute a seizure under the Fourth Amendment, they never argue nor cite to legal authority that the shooting and killing of the dog *was not* a seizure in either their opening or reply brief. In fact, in their opening brief, Defendants admit that Deputy Greve seized Kay's property by shooting the brown dog. (R. 33-1, Mem. in Support of Mot. Summ. J., at 4.) Further, Defendants do not contest that the taking and impounding of Kay's white dog was a seizure under the Fourth Amendment.

Amendment protects a person's television set and couch, a family pet falls under this same analysis. *See Pepper v. Village of Oak Park,* 430 F.3d 805, 809 (7th Cir. 2005) (couch and television set are personal "effects" protected under Fourth Amendment.); *San Jose Charter,* 402 F.3d at 975 (dogs are more than personal effects, "emotional attachment to a family's dog is not comparable to a possessory interest in furniture"); *see also Anzalone v. Kragness,* 356 Ill.App.3d 365, 369, 292 Ill.Dec. 331, 826 N.E.2d 472 (Ill.App.Ct. 2005) ("in the eyes of common law, a pet 'is an item of personal property'") (citation omitted).

Although Defendants do not dispute that the dogs are personal effects protected under the Fourth Amendment, Defendants contend that the seizure of the dogs was reasonable. Indeed, the touchstone of the Court's Fourth Amendment inquiry is reasonableness. *Green v. Butler,* 420 F.3d 689, 694 (7th Cir. 2005); *see also Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Fourth Amendment's central requirement is one of reasonableness). Although warrantless seizures are generally considered unreasonable, *see Illinois v. McArthur,* 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), the Court must still balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citation and internal quotations omitted).

Relying on the Supreme Court's decision in *Graham*, Defendants contend that Deputy Greve's actions were reasonable because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. More specifically, Defendants contend that

6

Deputy Greve had to make the split-second determination that his life and safety were in danger because the brown dog was attacking him. Defendants' argument is based on facts which are in dispute.

Although Deputy Greve testified at his deposition that Kay's front door was open and the brown dog pushed open the storm door and grabbed him by the sleeve, Kay sets forth evidence that he closed his doors before leaving for work that day. (Pl.'s Stmt. Facts ¶ 46.) Kay further presented evidence that his brown dog attended obedience training, that there is no history that his dogs have bitten anyone, and that there were no complaints from neighbors or animal control about his dogs. (*Id.* ¶¶ 42, 43, 44.) Meanwhile, there is evidence in the record that Deputy Greve was aware that there was a dog in Kay's residence before shooting the brown dog.

At this procedural posture, it is not the Court's role to weigh the evidence, judge witness credibility, or determine the truth of a matter. *See Anderson v. Liberty Lobby, Inc*, 477 U.S. at 249-50. Instead, the Court must determine whether there is a genuine issue of material fact for trial. *See id.* Based on the evidence presented in the parties Rule 56.1 Statements and viewing the facts and all reasonable inferences in a light most favorable to Kay, there is a genuine issue of material fact regarding the circumstances surrounding the seizure of Kay's brown dog. As such, the Court cannot make a "reasonableness" determination at this juncture. *See Abdullahi v. City of Madison,* 423 F.3d 763, 773 (7th Cir. 2005) ("*Graham* reasonableness inquiry 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom'") (citation omitted).

Next, Defendants argue that Deputy Greve's actions of entering Kay's residence and seizing Kay's white dog was reasonable because the dog was unrestrained and unattended

7

(although inside the residence),[4] was not wearing rabies tags, and was dangerous. First, Deputy Greve testified at his deposition that the fact the dogs were not wearing rabies tags played no role in his actions. In fact, he stated "I didn't even have a chance to look." (Pl.'s Stmt. Facts ¶ 74, Greve Dep., at 73.) Further, Deputy Greve testified that he did not feel immediately threatened by the white dog when the dog jumped up and down at the window. (*Id*., Greve Dep., at 73-74.) Moreover, Defendants' argument that the white dog was dangerous because it is a pit bull is based on disputed facts. Meanwhile, Kay has offered evidence that the white dog had no history of violence and that Deputy Greve and Animal Warden Frank Pierson found it in an isolated area of the residence. Likewise, there is no evidence that the white dog attacked either Deputy Greve or Pierson.

Again, viewing the facts and all reasonable inferences in a light most favorable to Kay, there is a genuine issue of material fact whether Deputy Greve's actions of entering Kay's residence and seizing the white dog were reasonable. Therefore, the Court denies Defendants' summary judgment motion as to Kay's Fourth Amendment claim.

## II.     Monell Claim

Defendants ask the Court to dismiss Kay's *Monell* claim against the Cook County Sheriff's Department, which includes his failure to train claim. *See Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Alexander v. City of*

---

[4] Defendants contend that under Illinois law, Animal Warden Pierson's actions of taking the white dog to the animal pound was lawful. *See* 510 ILCS 5/9. Under Section 9, "[a]ny dog found running ***at large*** contrary to provisions of this Act may be apprehended and impounded." (emphasis added). It is undisputed that the white dog was in Kay's residence and not "at large" at the time Pierson and Deputy Greve removed it to the animal shelter. Accordingly, Defendants' argument is without merit.

*South Bend,* 433 F.3d 550, 554 (7th Cir. 2006) (failure to train and supervise claims fall under *Monell* rubric). As Kay correctly asserts, the Court limited the parties' discovery to first determine the underlying claims. (R. 25-1, Minute Order Limiting Discovery.) Accordingly, the Court denies Defendants' summary judgment motion concerning Kay's *Monell* claim as premature. Further, the Court allows the parties to conduct discovery concerning Kay's *Monell* claim, and thus lifts the stay concerning such discovery.

### III.     Fourteenth Amendment Claim

In Count II of his Complaint, Kay brings a claim under the Fourteenth Amendment which prohibits the deprivation of liberty and property without due process of law. The Supreme Court has instructed that litigants should base their constitutional claims on the explicit textual command of the Constitution when possible, as opposed to the general notion of substantive due process. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims."). The holding in *Graham* "requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Therefore, Kay cannot maintain a substantive due process claim because the Fourth Amendment explicitly protects the rights Deputy Greve allegedly violated. *See McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003); *see also Doe v. Heck*, 327 F.3d 492, 519 n.23

(7th Cir. 2003) (plaintiff's claim seeking to recover damages for physical seizure is more appropriately analyzed under Fourth Amendment). Therefore, the Court dismisses Kay's substantive due process claim in Count II with prejudice.

## IV. Qualified Immunity

Deputy Greve maintains that the doctrine of qualified immunity protects him from this lawsuit. Qualified immunity shields government officials performing discretionary functions from civil litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The goal of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.* "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

When determining whether qualified immunity shields a public official from a Section 1983 action, the Court undertakes a two-part inquiry. *Borello v. Allison,* 446 F.3d 742, 746 (7th Cir. 2006). The Court's first inquiry is whether the facts, viewed in the light most favorable to Kay, show that Deputy Greve violated a constitutional right. *Id.; Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005). If the facts comprise a constitutional violation, the Court must determine whether the constitutional right was clearly established at the time of Deputy Greve's conduct. *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th Cir. 2005).

Because the Court has determined that there is a genuine issue of material fact whether Deputy Greve violated Kay's Fourth Amendment rights, the Court turns to the second prong of the qualified immunity inquiry, namely, whether Kay's Fourth Amendment rights were clearly

established at the time of Deputy Greve's actions. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *See Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) (per curiam). This inquiry is two-fold: (1) whether Kay's constitutional rights were clearly established; and (2) whether a reasonable officer in Deputy Greve's position would have understood that his actions were unlawful. *See Saucier,* 533 U.S. at 202; *see also Anderson v. Creighton*, 483 U.S. 635, 640-41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

A right is clearly established if a "court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Wernsing,* 423 F.3d at 742. As the Supreme Court has explained: "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (citations omitted).

First, it is well-established that destroying an individual's personal property is a seizure under the Fourth Amendment. Specifically, the Supreme Court's 1984 decision in *United States v. Jacobsen* reaffirmed the established principle that a Fourth Amendment seizure of property occurs when there is a meaningful intrusion with an individual's possessory interest in property and that the destruction of property constitutes a seizure under the Fourth Amendment. *Id.* at 113, 124-25; *see also Soldal,* 506 U.S. at 61. Moreover, the Supreme Court has explicitly held: "In the ordinary case, the Court has viewed a seizure of personal property as per se unreasonable

11

within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *see also Illinois,* 531 U.S. at 330. Simply put, since at least 1983, warrantless seizures are generally considered per se unreasonable.

Based on this established Supreme Court case law, destroying an individual's personal property, especially without a warrant, implicates an individual's Fourth Amendment right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Therefore, Kay's constitutional rights were clearly established at the time of Deputy Greve's actions.

Next, the Court must determine whether a reasonable officer would believe that Deputy Greve's actions were lawful in light of this clearly established law and the information Deputy Greve possessed at that time. *See Anderson v. Creighton,* 483 U.S. at 641; *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 620 (7th Cir. 2002) (question turns on "objective legal reasonableness" of officer's conduct). The established Supreme Court case law discussed above should have alerted a reasonable officer in Deputy Greve's position that killing a person's dog and the taking of a dog – or more generally – destroying and taking an individual's personal property without a warrant was unlawful. More specifically, Deputy Greve should have known that he could not lawfully destroy or take a dog that posed no imminent danger to him. *See Andrews v. City of West Branch, Iowa,* 454 F.3d 914, 919 (8th Cir. 2006). Because there is a genuine issue of material fact whether Kay's dogs were dangerous and whether they attacked Deputy Greve, at this juncture, the Court cannot conclude that Deputy Greve is entitled to

qualified immunity.

**V.     State Law Claims**

Finally, Defendants contend that there is "no reasonable likelihood" that Kay will prevail on his state law claims. First, Defendants maintain that Kay's respondeat superior claim against Cook County under Count V must be dismissed. Indeed, a county cannot be liable for actions of its sheriff under the theory of respondeat superior because an employer-employee relationship does not exist between the county and sheriff or the sheriff's deputies. *See Moy v. County of Cook*, 159 Ill.2d 519, 531-32, 203 Ill.Dec. 776, 640 N.E.2d 926 (Ill. 1994). Therefore, the County cannot be liable under the doctrine of respondeat superior. Cook County, however, is a necessary party to this lawsuit because it is responsible for any damages sought from an independently elected county officer, in this instance, the sheriff. *See Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003); *see also Wallace v. Masterson,* 345 F.Supp.2d 917, 926 (N.D. Ill. 2004). Accordingly, the Court dismisses Kay's respondeat superior claim against Cook County in Count V, but Kay's indemnification claim against Cook County in Count VI stands. *See* 745 ILCS 10/9-102; *Canon v. Burge,* No. 05 C 2192, 2006 WL 273544, at *21 (N.D. Ill. Feb. 2, 2006).

Next, Defendants make no specific arguments as to why Kay's trespass or conversion claims should be dismissed. It appears that Defendants are asking the Court to relinquish its supplemental jurisdiction over the state law claims because they are entitled to judgment on the federal claims. *See* 28 U.S.C. § 1367(c)(3); *see also Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999) ("It is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed

13

prior to trial."). As discussed, Defendants are not entitled to judgment as a matter of law on Kay's Fourth Amendment claims, and thus the Court retains jurisdiction over Kay's remaining state law claims.

Despite Defendants' lack of argument, for the sake of completeness the Court addresses Kay's remaining state law claims. In Count III of the Complaint, Kay alleges claims of trespass to real and personal property. The tort of trespass is "an invasion in the exclusive possession and physical condition of land." *Lyons v. State Farm Fire & Casualty Co.,* 349 Ill.App.3d 404, 411, 285 Ill.Dec. 231, 811 N.E.2d 718 (Ill.App.Ct. 2004) (citation omitted); *see also Desnick v. American Broad. Co.*, 44 F.3d 1345, 1351 (7th Cir. 1995) ("To enter upon another's land without consent is a trespass."). An officer's entry onto another person's land may be privileged, however, if the officer is reasonably exercising his lawful authority. *Lee v. Radulovic,* No. 94 C 930, 1994 WL 384010, at *5 (N.D. Ill. July 20, 1994) (citing Restatement (Second) of Torts § 265). Here, the parties have set forth evidence creating a genuine issue of material fact whether Deputy Greve's entry was lawful and reasonable, namely, whether Kay's front door was open and whether Kay's brown dog lunged at Deputy Greve through the front door. Therefore, the Court denies summary judgment as to Kay's trespass to land claim.

Under Count III, Kay also alleges a claim of trespass to personal property. "An injury to or interference with possession, with or without physical force, constitutes a trespass to personal property." *Sotelo v. Direct Revenue, LLC,* 384 F.Supp.2d 1219, 1229 (N.D. Ill. 2005) (quotation omitted). "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Id.* (citation omitted). Further, harm to the personal property or diminution to its value can result in

liability. *Id.* (citing Restatement (Second) of Torts § 218(b)). Again, there are genuine issues of material fact concerning the circumstances surrounding Deputy Greve's actions of shooting Kay's brown dog and removing Kay's white dog from his residence. Therefore, the Court denies Defendants' summary judgment as to Count III of Kay's Complaint.

Last, in Count IV of the Complaint, Kay alleges a claim of conversion. Under Illinois law, the elements of conversion include: (1) defendant's unauthorized or wrongful assumption of control, dominion, or ownership over a plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) plaintiff's demand for possession of the property. *Van Diest Supply Co. v. Shelby County State Bank,* 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 184 Ill.2d 109, 234 Ill.Dec. 455, 703 N.E.2d 67, 70 (Ill. 1998)). Viewing the facts and all reasonable inferences in a light most favorable to Kay, there is a genuine issue of material fact whether Kay has fulfilled these elements, especially whether Deputy Greve's actions were unauthorized or wrongful. Therefore, the Court denies Defendants' motion for summary judgment as to Kay's state law conversion claim under Count IV of the Complaint.

## **CONCLUSION**

For these reasons, the Court grants Defendants' Motion for Summary Judgment as to Count II (Fourteenth Amendment) and Count V (respondeat superior) of Plaintiff's Complaint. The Court denies Defendants' Motion for Summary Judgment as to Counts I (Fourth Amendment), III (trespass), IV (conversion), and VI (indemnification) of the Complaint, along with Defendants' qualified immunity defense. Finally, the Court lifts the discovery stay concerning Plaintiff's *Monell* claim.

Dated: August 29, 2006

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**